UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RAYMOND NEWSOM, | ) | Case No.  10cv746-WQH (BGS) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **FOR ORDER DENYING** |
| | ) | **RESPONDENT'S MOTION TO** |
| JAMES A. YATES, Warden, | ) | **DISMISS** |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On April 8, 2010, Petitioner Raymond Newsom, a state prisoner proceeding *pro se*, filed the Petition for Writ of Habeas Corpus currently before the Court.  (Doc. No. 1.)  Petitioner challenges his 2006 drug convictions. (Id. at 1-2.)  On June 14, 2010, Respondent filed a motion to dismiss the petition, arguing that the Petition is untimely and four of the claims are procedurally defaulted.  (Doc. No. 9-2.)  On August 30, 2010, Petitioner filed a "Response to Motion to Dismiss Petition for Writ of Habeas Corpus Based on His Untimeliness and Procedural Default."  (Doc. No. 16.)

This Court has considered the Petition, Respondent's Motion to Dismiss, Petitioner's opposition to Respondent's motion to dismiss, and all other documents submitted by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Respondent's motion to dismiss be **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 20, 2006, a San Diego jury convicted Petitioner of selling, transporting, and possessing for sale cocaine base in violation of California law.  (Lodgment 1 at 112; Lodgment 4 at 1.)  Petitioner then admitted six prior drug convictions, a strike, and serving five prior prison terms.  (Lodgment 1 at 85-87; Lodgment 4 at 1.)  Petitioner was sentenced to seventeen years in custody.  (Lodgment 1 at 112; Lodgment 4 at 2.)

Petitioner filed a notice of appeal and his lawyer subsequently filed an appellate brief pursuant to People v. Wende, 25 Cal.3d 436 (1979) and Anders v. California, 386 U.S. 738 (1967).  (Lodgment 2.)  The appellate court gave Petitioner an opportunity to file a supplemental brief and he apparently did so.[1] (Lodgments 3 & 4.)  On August 24, 2007, the appellate court affirmed the judgment.  (Lodgment 4.)  Petitioner did not file a petition for review in the California Supreme Court.  (Doc. No. 1 at 2; Doc. No. 9-2 at 7.)  The appellate court issued a remittitur on October 26, 2007, confirming that the appellate decision was final.  (Lodgment 5.)

On October 30, 2008[2], Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (Lodgment 6.)  On May 13, 2009, the Court denied the Petition.  (Lodgment 7.)  On August 5, 2009, Petitioner filed a second  petition for writ of habeas corpus in the California Supreme Court, which was denied on January 13, 2010.  (Lodgments 8 & 9.)  Petitioner filed the instant federal petition on April 8, 2010.  (Doc. No. 1.)

## SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

---

[1] The appellate opinion (Lodgment 4 at 3) indicates that Petitioner filed a supplemental brief but the actual brief has not been lodged with this Court.

[2] In determining the filing date of a petition, *pro se* prisoners generally are entitled to the benefit of the "mailbox rule," which dictates that the statutory filing date is the date a document was presented to prison authorities for mailing to the court. See Houston v. Lack, 487 U.S. 266, 276 (1988); Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003).  Here, the correct date is unclear.  Petitioner signed his Petition under penalty of perjury on November 7, 2008.  (Lodgment 6 at 6.)  However, Petitioner's proof of service states that he gave the Petition to prison officials on October 30, 2008.  (Id. at 62.)  The Petition cover sheet contains two "Received" stamps-one indicating it was received on November 3, 2008 and one indicating it was received on November 12, 2008.  (Id. at 1.)  It was filed on November 12, 2008.  (Id.)  Neither party explained the date discrepancy.  Because the submitted evidence is unclear, the Court will use October 30, 2008, the date Petitioner declares he gave the Petition to prison authorities for mailing, as the filing date.

The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

## DISCUSSION

Respondent contends that the Petition should be dismissed because it is barred by the one-year statute of limitations.  (Doc. No. 9-2 at 8-12.)  Alternatively, Respondent argues that the four claims presented in the second habeas petition are procedurally barred.  (Id. at 12-16.)  Petitioner responds that the petition is timely because the appellate court did not send him a copy of the decision denying his appeal so he did not learn of the decision until October 1, 2008.  (Doc. No. 16 at 2-3.)  Petitioner asserts that he immediately appealed the denial and then subsequently filed a state habeas petition raising additional issues.  (Id. at 3-5.)  Accordingly, Petitioner argues that he is entitled to statutory and/or equitable tolling of the statute of limitations.  (Id. at 7-15.)  Petitioner also argues that his claims are not procedurally barred.  (Id.)

**A.      The AEDPA Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners.  28 U.S.C. § 2244(d).  Section 2244(d)'s one-year limitations period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court" and runs from the latest of:

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D).

Here, the parties agree that subsection A governs the start of the statutory limitations period but they disagree as to the date "on which the judgment became final."  Respondent asserts that the judgment became final on October 3, 2007.  (Doc. No. 9-2 at 3.)  In reaching this conclusion, Respondent explains that the

appellate court issued its decision on August 24, 2007 and Petitioner did not file a petition for review in the California Supreme Court.  (Id.)  Because Petitioner did not complete his direct review, Respondent states that the statute of limitations commenced at the expiration of the forty days authorized by statute for filing a petition for review. (Id.)  Adding forty days to August 24, 2007, Respondent concludes that the limitations period began on October 3, 2007. (Id.)

Petitioner asserts that his federal habeas petition is timely.  (Doc. No. 16.)  Petitioner explains that after his lawyer filed the Wende brief in the Court of Appeals, Petitioner filed his own supplemental brief arguing that there was insufficient evidence to support his conviction.  (Id. at 2.)  Even though Petitioner filed a supplemental brief and therefore was a party to the proceedings, he was not on the service list and did not receive a copy of the appellate court's ruling. (Id.)  Petitioner waited patiently for approximately one year and then filed two documents seeking a ruling on his supplemental argument. (Id. at 3.)  On October 1, 2008, Petitioner received a copy of the Remittitur and the appellate ruling. (Id. at 3-4.)  Petitioner claims that he tried to appeal the order affirming his conviction but "inadvertently" used the Writ of Habeas Corpus form, rather than the Petition for Review form.  (Id. at 4.)  As a result, Petitioner asserts that his first habeas petition filed in the California Supreme Court actually was a direct appeal, not a collateral challenge. (Id. at 4-5.)  Petitioner explains that after the California Supreme Court denied his first pleading, he filed his only collateral challenge less than three months later.  (Id. at 8.)  After the California Supreme Court denied this pleading on January 13, 2010, Petitioner filed his federal habeas petition on April 8, 2010.  Accordingly, Petitioner argues that his federal habeas petition is timely.  Alternatively, Petitioner argues, in essence, that he is entitled to equitable tolling.

### 1. Commencement of the AEDPA Statute of Limitations

Subsection A provides that the one-year AEDPA statute of limitations begins to run on the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. §2244(d)(1)(A).  Here, the state appellate court denied Petitioner's direct appeal on August 24, 2007. (Lodgment 4.)  Petitioner did not file a petition for review in the California Supreme Court within the authorized time period so, on October 3, 2007, forty days after the order was issued, the

1   appellate court's decision became final.  Cal. R. Ct. 8.366[3]; Smith v. Duncan, 297 F.3d 809, 813 (9th Cir.

2   2002).

3         Petitioner claims that his first habeas petition, filed on October 30, 2008, actually was a direct

4   appeal.  (Doc. No. 16 at 4.)  While the title of Petitioner's brief is "Petition for Writ of Habeas Corpus,"

5   Petitioner describes his pleading in section 18 of the form as a "Petition for Review From Denial of the

6   Fourth Appellate Court" and in the proof of service as "Petitioner for Petition For Procedure Issue [sic]

7   And, Petitioner for Review of Supplemental Brief To To [sic] The California State Supreme Court."  (Id.;

8   Doc. No. 16-1, Exh. F; Lodgment 6.) In the body of the brief, Petitioner explains that he did not receive

9   notice of the appellate court's denial until October 1, 2008 and asks the court to accept his late filing.

10  (Lodgment 6 at 32-33.[4])  The California Supreme Court denied the petition without comment or citation.

11  Lodgment 7.

12        California law requires a prisoner to file a Petition for Review within forty days after the appellate

13  court denies the direct appeal.  Cal. R. Ct. 8.366(b) & 8.500(e).  Petitioner did not do so.  While Petitioner

14  asked the California Supreme Court in his first pleading to accept the late filing, the court denied the entire

15  document without comment.  (Lodgment 7.)  Because the court denied the late filing, the pleading did not

16  reset the AEDPA statute of limitations.  See Randle v. Crawford, 604 F.3d 1047, 1054-55 (9th Cir. 2010)

17  (filing an untimely notice of appeal does not delay the commencement of the AEDPA statute of limitations).

18        Thus, the AEDPA statute of limitations began to run on October 4, 2007 and expired one year later

19  on October 4, 2008.  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (the AEDPA statute of

20  limitations begins to run the day after the conviction becomes final).  Petitioner did not file any collateral

21  challenges to his conviction during that time period so Petitioner is not entitled to statutory tolling.  28

22  U.S.C. §2244(d)(2); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999) (The statute of limitations is not

23  tolled "from the time a final decision is issued on direct state appeal [to] the time the first state collateral

24  challenge is filed.").  Thus, absent equitable tolling, Petitioner's federal habeas petition is untimely.

25

26        [3]The Court notes that Respondent repeatedly incorrectly cites to the California Rules of Court because he uses the code
    numbers that were applicable prior to 2007, rather than the current ones.  (See e.g., Doc. No. 9-2 at 3.)

27        [4]Lodgment 6 is not numbered so the Court numbered the pages sequentially from 1 to 62 and uses those numbers in this

28  Report and Recommendation.

1 | / / /

2 | **2.**   **Equitable Tolling**

3 | The United States Supreme Court has held that the AEDPA's one-year statute of limitations is

4 | subject to equitable tolling in appropriate cases.  Holland v. Florida, 130 S. Ct. 2549, 2560 (2010).  While

5 | equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999), it is

6 | appropriate where a habeas petitioner demonstrates two specific elements: "(1) that he has been pursuing

7 | his rights diligently, and (2) that some extraordinary circumstance stood in his way," Holland, 130 S. Ct.

8 | at 2562 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  The bar is set high to effectuate the

9 | "AEDPA's statutory purpose of encouraging prompt filings in federal court in order to protect the federal

10 | system from being forced to hear stale claims."  Guillory v. Rose, 329 F.3d 1015, 1018 (9th Cir. 2003)

11 | (citing Carey v. Saffold, 536 U.S. 214, 226 (2002)).   Petitioner argues that he is entitled to equitable tolling

12 | because the appellate court never notified him that his appeal had been denied and, as soon as he learned

13 | of the denial, he prepared and filed another challenge to his sentence.[5]  (Doc. No. 16 at 4.)

14 | The Ninth Circuit has held that "'a prisoner's lack of knowledge that the state courts have reached

15 | a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently

16 | in the matter.'"  Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009).  In making this assessment, courts

17 | should consider "(1) on what date [the prisoner] actually received notice, (2) whether [the prisoner] acted

18 | diligently to obtain notice . . .; and (3) whether the alleged delay of notice caused the untimeliness of his

19 | filing and made a timely filing impossible."  Id. at 998 (citations omitted).

20 | Here, Respondent does not dispute Petitioner's claim that Petitioner did not receive notice that his

21 | appeal had been denied until October 1, 2008 or that the delayed notice caused the untimely filing and made

22 | a timely filing impossible.[6]  (Doc. No. 9-2 at 11.)  Rather, Respondent only challenges the second element--

23 |

24 | [5]As discussed above, the form document filed by Petitioner is entitled "Petition for Writ of Habeas Corpus" (Doc. No.

25 | 16-1, Exh. F; Lodgment 6) but Petitioner argues that he intended it to be a direct appeal of the appellate court's denial of the arguments set forth in his supplemental brief (Doc. No. 16 at 4).

26 | [6]There is ample evidence establishing both elements.  Petitioner repeatedly states that he did not receive a copy of the

27 | order.  (Doc. No. 16 at 2-3, 8, 10, 13-14.)  In support of his position, Petitioner submits two documents that he filed inquiring about the status of his appeal.  (Doc. No. 16-1, Exh. B (Notice and Request for Ruling Cal. Rules of Ct. 4.551(a)(3) dated August 12, 2008) and Exh. C (Petitioner Request This Court For A Status Report In Regards To The Above Case Number dated

28 | September 26, 2008).)  Petitioner also submitted a mail log indicating that he did not receive any  mail from his attorney or the

that Petitioner did not act diligently to obtain notice because he waited more than one year before writing the Court of Appeal inquiring about the status of his case. (Id. at 11-12.)  Respondent also notes that Petitioner failed to contact his own attorney during the time period to inquire about the appellate ruling. (Id. at 12.)  While Petitioner does not dispute that he did not inquire about the status of his appeal until August 12, 2008, Petitioner argues this delay was reasonable because his attorney had told him that the appellate process was "very slow" and the whole process "will take about one year." (Doc. No. 16 at 2, 10-11; Doc. No. 16-1, Exh. A.)

As Petitioner explains through words and supporting documents, in April 2007, his attorney advised him that the appellate process is a lengthy process and he should be patient. (Doc. No. 16-1, Exh. A ("The entire appeal process will take about a year, so be patient.  The process can be very slow.").)  Petitioner's attorney then filed a Wende brief, indicating that there were no arguable issues for appeal. (Lodgment 2.) On June 7, 2007, the appellate court notified Petitioner of his opportunity to file a supplemental brief. (Lodgment 3.) Shortly thereafter, Petitioner's attorney sent a letter to Petitioner. (See Doc. No. 16-1, Exh. D (6/27/2007 letter from Kessler & Seecof, LLP).)  Although the letter was not provided to this Court, the mail log indicates that this was the last letter sent to Petitioner from his attorney.   After receiving an extension from the court, Petitioner apparently filed his supplemental brief on July 30, 2007.  (See Lodgment 4 at 3; Doc. No. 16-1, Exh. B.)  On August 24, 2007, the appellate court affirmed the judgment (Lodgment 4) but did not notify Petitioner.

On August 12, 2008, Petitioner filed a Notice and Request for Ruling in the appellate court seeking a ruling on his Supplemental Brief.  (Doc. No. 16-1, Exh. B.)  Petitioner did not receive a response so on September 26, 2008, he filed a second request for status report.  (Id., Exh. C.)  On October 1, 2008, in response to Petitioner's pleadings, the appellate court sent Petitioner a copy of the Remittitur and opinion. (Doc. No. 16 at 3-4; Doc. No. 16-1, Exh. D.)  Petitioner filed his first pleading in the California Supreme

---

court of appeals after August 24, 2007 and before October 1, 2008.  (Doc. No. 16-1, Exh. D.)  Finally, while the copy of the appellate court order affirming the judgment does not  indicate upon whom the order was served (Lodgment 4), the  Remittitur executed on October 25, 2007 contains an Affidavit of Transmittal indicating that it was served on Petitioner's attorney but not Petitioner (Doc. No. 16-1, Exh. E; Lodgment 5 (Remittitur without Affidavit of Transmittal)).  Respondent did not submit any contradictory evidence or argument.  Since Petitioner did not know that his direct appeal had been decided, he could not properly file either a petition for review or a habeas petition.

1    Court on October 30, 2008.

2        The Ninth Circuit has not defined what constitutes the requisite diligence in cases such as this one

3    where the prisoner does not receive notice of a final court order. See Ramirez, 571 F.3d at 997 (remanding

4    for district court to determine whether prisoner acted diligently). Because the analysis is fact-specific,

5    courts have varied in their interpretation of what constitutes the requisite diligence. For example, the

6    Eleventh Circuit found an eighteen-month delay was sufficiently diligent because the clerk of court had

7    advised the prisoner that he would be notified as soon as the ruling was filed. Knight v. Schofield, 292 F.3d

8    709 (11th Cir. 2002). Similarly, the Second Circuit found a nine-month delay in requesting information

9    regarding a ruling was sufficiently diligent because "'[f]rom a litigant's perspective, it is a difficult, if not

10   impossible endeavor, to estimate how long a reviewing court will take to decide a particular motion." Diaz

11   v. Kelly, 515 F.3d 149, 155 (2d Cir. 2008) quoting Miller v. Collins, 305 F.3d 491, 495-96 (6th Cir. 2002);

12   see also Stinson v. Cate, 2010 WL 836930, *8 (C.D. Cal. March 3, 2010) (prisoner entitled to equitable

13   tolling for five month delay in receiving notice of state court ruling); Lewis v. Mitchell, 173 F. Supp. 2d

14   1057, 1062 (C.D. Cal. 2001) (same). On the other hand, several courts found that delays of sixteen to

15   twenty-one months did not establish diligence. Drew v. Department of Corrections, 297 F.3d 1278 (11th

16   Cir. 2002) (one letter sent after sixteen months not diligent); LaCava v. Kyler, 398 F.3d 271, 277 (3rd Cir.

17   2005) (insufficient diligence where prisoner waited 21 months to inquire about status of case); Popov v.

18   Martel, 2010 WL 2904642, *4 (E.D. Cal. July 26, 2010) (same).

19       Here, the undisputed evidence establishes that Petitioner's lawyer advised Petitioner that the

20   appellate process would take about one year and that he should be patient. The attorney then filed a Wende

21   brief, indicating that he did not see any appellate issues, which required Petitioner to become his own

22   attorney and file his own appeal.[7] Petitioner did not receive any communication from his attorney or the

23

24       [7]Respondent argues that Petitioner's failure to contact his lawyer negates diligence. While failure to contact counsel
     may demonstrate a lack of diligence, the Court finds it does not do so in this case. See, e.g., Rodriguez v. Marshall, 2009 WL

25   1424260, *5-6 (E.D. Cal. May 20, 2009)(no diligence where Petitioner had constructive statutory notice of denial and appellate
     counsel had advised Petitioner of need to begin preparing habeas petition but counsel failed to notify Petitioner of denial and

26   Petitioner waited more than fifteen months to contact counsel or the court); Hunter v. Galaza, 2007 WL 2812176 (E.D. Cal. Sept.
     26, 2007) (attorney's negligent failure to advise prisoner of direct appeal status does not warrant equitable tolling of federal habeas

27   deadline). Here, Petitioner's lawyer filed a Wende brief stating that there were no appellate issues. As a result, Petitioner became
     his own appellate attorney and the court had an independent duty to directly notify Petitioner of the decision. See Cal. R. Ct.

28   8.264 & 8.366. As such, it was not unreasonable for Petitioner to not contact the lawyer who believed there were no appellate

court of appeals after he filed his supplemental brief alleging an appellate issue.  In accordance with his lawyer's letter, Petitioner waited approximately one year after filing his supplemental brief to file his first request regarding the status of his case to the appellate court.  Petitioner then filed his first pleading in the state court within four weeks after receiving notice that his appeal had been denied.  Given the unique facts of this case, the Court finds that Petitioner acted with the required diligence.  See Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002) (the grounds for equitable tolling are "highly fact dependent").

Accordingly, the Court finds that Petitioner is entitled to equitable tolling from October 3, 2007, the date the appellate court's decision became final, until October 1, 2008, the date Petitioner received notice that the appellate court had denied his appeal.  The AEDPA statute of limitations expired one year and one day later on October 2, 2009.  Petitioner did not file his federal habeas petition until April 8, 2010 so, again, the federal petition is untimely unless Petition is entitled to statutory or equitable tolling.

### 3.   **Statutory Tolling**

The AEDPA tolls its one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending."  28 U.S.C. § 2244(d)(2); Nino, 183 F.3d at 1006.  There is a difference, however, between a "filed" petition and a "properly filed" petition as required by AEDPA.  Artuz v. Bennett, 531 U.S. 4, 8 (2000).  As the Supreme Court explained,

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record.  And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.

Id. (citations omitted).  Thus, a habeas petition that is denied by the California Supreme Court as untimely or improperly successive is not "properly filed" for the purposes of section 2244(d)(2) and does not toll the AEDPA limitations period.  Wall v. Adkins, 2010 WL 3633001, *5 (C.D. Cal. Aug. 9, 2010); Bonner v. Carey, 425 F.3d 1145, 1149 (9th Cir. 2005) (a petition denied as untimely does not statutorily toll the time limitation).

---

issues to obtain advice about the appeal Petitioner was advancing, especially since the lawyer had told Petitioner to be patient because the process takes one year.  In this unusual circumstance, the Court finds the failure to contact counsel regarding the status of the appeal did not negate the requisite diligence.  The Court also notes that in this case there was no constructive notice of the denial.

1    Here, Petitioner argues that his first filing was not a habeas petition; it was part of the direct appeal.

2    Respondent, on the other hand, argues that the first filing was a habeas petition and the second filing was

3    an improper successive habeas petition.  As discussed elsewhere in this Report and Recommendation, the

4    California Supreme Court did not specifically address Petitioner's request for permission to file a late direct

5    appeal when it denied his first pleading.  (Lodgment 7.)  The California Supreme Court also did not clearly

6    state that the second filing was an improper successive habeas filing.  (Lodgment 9.)  Rather, the court

7    denied the first pleading without comment and the second pleading with a single citation to In Re Clark

8    (1993) 5 Cal. 4th 750.  (Lodgments 7 & 9.)  As a result, it is unclear how the court interpreted the pleadings

9    and whether or not they were timely filed.

10    Assuming that the California Supreme Court construed the first filing as a habeas petition[8], Petitioner

11    is entitled to statutory tolling from the date of filing (October 30, 2008) to the date of denial (May 13, 2009).

12    Under this scenario, 29 days of the limitations period expired before Petitioner filed his first pleading, so

13    Petitioner had 336 days left in the limitations period after the court denied his pleading.  Petitioner filed his

14    federal habeas petition on April 10, 2010, 330 days later.  Accordingly, even if Petitioner did not receive

15    statutory or equitable tolling for the second filing[9], his federal habeas petition was timely.

16    The Court therefore finds that the AEDPA statute of limitations began to run on October 4, 2007,

17    Petitioner is entitled to equitable tolling from October 3, 2007 to October 1, 2008, and Petitioner is entitled

18    to statutory tolling from October 30, 2008 to May 13, 2009.  Thus, Petitioner's federal habeas petition filed

19    on April 8, 2010 is timely and the Court **RECOMMENDS** that Respondent's motion to dismiss on this

20

21    [8]This interpretation seems the most likely.  If, on the other hand, the court construed Petitioner's first filing as part of
the direct appeal, the denial could have been a denial on the merits or it could have been a denial of Petitioner's request to file

22    a late petition for review.  See Harrington v. Richter, 562 U.S. ___, No. 09-587 (January 19, 2011) (a silent denial of a habeas
petition is presumed to be an adjudication on the merits).  If it was a denial on the merits, the AEDPA statute of limitations would

23    have begun to run 90 days after the Court's order dated May 13, 2009 (Bowen v. Roe, 188 F.3d 1157 (9th Cir. 1999)) and the
federal petition filed on April 8, 2010 would have been timely.  However, there is no evidence to support this interpretation.  If

24    the denial was to Petitioner's request to file an untimely petition for review, the limitations would not be tolled or reset (Randle,
604 F.3d at 1055) and the federal petition would be untimely.  Again, this interpretation is unlikely since the court did not mention

25    the request or untimeliness in the denial and the next pleading is denied for being untimely or successive.  (Lodgments 7 & 9.)

26    [9]Petitioner is not entitled to statutory tolling for the second petition since it was denied as untimely or for being a
successive petition.  See Wall, 2010 WL 3633001, *5.  While there is an argument that Petitioner is entitled to equitable tolling

27    since the court failed to notify him regarding the appellate denial, there is evidence that he attempted to appeal the appellate
decision, and the California Supreme Court did not clearly address the late-filing request, the Court need not resolve this issue

28    since the federal petition is timely without the additional tolling.

1    basis be **DENIED**.

2    **B. Procedural Default**

3         Respondent argues that the claims asserted in Petitioner's second state habeas petition should be

4    dismissed because they are procedurally barred.  (Doc. No. 9-2 at 12-16.)  Respondent states that the

5    California Supreme Court denied Petitioner's second habeas petition on the grounds that it was a successive

6    petition and concludes, therefore, that the four claims raised in the second state habeas petition are

7    procedurally barred.  (Id.)

8         "The procedural default doctrine 'bar[s] federal habeas [review] when a state court declines to

9    address a prisoner's federal claims because the prisoner has failed to meet a state procedural requirement.'"

10   Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v.

11   Thompson, 501 U.S. 722, 729 (1991)).  The doctrine "'is a specific application of the general adequate and

12   independent state grounds doctrine.'"  Bean, 96 F.3d at 1129 (quoting Wells v. Maass, 28 F.3d 1005, 1008

13   (9th Cir. 1994)).  Under the adequate and independent state grounds doctrine, federal courts "'will not

14   review a question of federal law decided by a state court if the decision of that court rests on a state law

15   ground that is independent of the federal question and adequate to support the judgment.'"  Bean, 96 F.3d

16   at 1129 (quoting Coleman, 501 U.S. at 729); see also Hill v. Roe, 298 F.3d 796, 798 (9th Cir. 2002);

17   LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001); Park v. California, 202 F.3d 1146, 1151 (9th Cir.

18   2000).

19        The Ninth Circuit has held that because procedural default is an affirmative defense, Respondent

20   must first have "adequately pled the existence of an independent and adequate state procedural ground. .

21   . ."  Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003).  Once the defense is placed at issue, the burden

22   shifts to petitioner, who must then "assert[] specific factual allegations that demonstrate the inadequacy of

23   the state procedure . . . ."  Id.  The "ultimate burden" of proving procedural default, however, belongs to

24   the state.  Id.  If the state meets this burden, federal review of the claim is foreclosed unless the petitioner

25   can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law,

26   or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

27   Coleman, 501 U.S. at 750.

28        The Ninth Circuit has explained that "'[f]or a state procedural rule to be "independent," the state law

1    grounds for the decision must not be interwoven with federal law.'" <u>Bennett</u>, 322 F3d at 581 (quoting

2    <u>LaCrosse</u>, 244 F.3d at 704 citing <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983)). "'A state law ground

3    is so interwoven if "the state has made application of the procedural bar depend on an antecedent ruling on

4    federal law [such as] the determination of whether federal constitutional error has been committed."'" <u>Id.</u>

5    (quoting <u>Park</u>, 202 F.3d at 1152 and <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985)).

6          For a state procedural rule to be adequate, "the state law ground for decision must be

7    well-established and consistently applied." <u>Bennett</u>, 322 F.3d at 583 (citing <u>Poland v. Stewart</u>, 169 F.3d

8    573, 577 (9th Cir. 1999)); <u>Townsend v. Knowles</u>, 562 F.3d 1200, 1207 (9th Cir. 2009). In addition, the state

9    procedural rule must be "clear . . . and well-established at the time of the petitioner's purported default."

10   <u>Bean</u>, 96 F.3d at 1129 (quoting <u>Wells</u>, 28 F.3d at 1010); <u>see also</u> <u>Fields</u>, 125 F.3d at 760, 762 (quoting <u>Ford</u>

11   <u>v. Georgia</u>, 498 U.S. 411 (1991) (stating that the state procedural rule must be firmly established, regularly

12   followed, and consistently applied to be adequate)).

13         In this case, Petitioner arguably filed two petitions for writ of habeas corpus in the California

14   Supreme Court. (Lodgments 6 & 8.) Petitioner did not file any habeas corpus petitions in the lower courts.

15   In the first petition, Petitioner raised the same challenges he raised in his supplemental filing in the appellate

16   court:   sufficiency of the evidence supporting his conviction and ineffective assistance of counsel.

17   (Lodgment 6.) The California Supreme Court denied the petition without comment or citation. (Lodgment

18   7; Doc. No. 9-2 at 7.[10]) In the second habeas petition, Petitioner raised the following claims: denial of his

19   Confrontation Rights, denial of his right to a fair trial, and ineffective assistance of trial and appellate

20   counsel. (Lodgment 8.) The California Supreme Court denied the second petition without comment but

21   with the following citation: "(See In re Clark (1993) 5 Cal.4th 750.)." (Lodgment 9.)

22         Respondent asserts that the <u>In re Clark</u> citation establishes that the court denied the second petition

23   because it was a successive petition. (Doc. No. 9-2 at 9.) However, that conclusion is not necessarily

24   correct. Courts cite <u>In re Clark</u> for several propositions, including those prohibiting untimely or successive

25   petitions. <u>Townsend</u>, 562 F.3d at 1206 (<u>In re Clark</u> dictates that a "habeas petition is untimely if it is filed

26

27        _____

28        [10]The Court notes that neither party provided the Supreme Court's actual orders. Rather, the Court is relying on the
     dockets provided by Respondent in the lodgments.

1  after an unjustified, substantial delay."); <u>Scott v. Garcia</u>, 2010 WL 917430, *9 (C.D. Cal. March 6, 2010)

2  ("<u>In re Clark</u> sets forth the California rule barring successive presentation of previously denied claims and

3  untimely petitions."); <u>Ratliff v. Hedgepeth</u>, 712 F. Supp. 2d 1028, 1050 (C.D. Cal. 2010) (a citation to <u>In</u>

4  <u>re Clark</u> may indicate that a petition is untimely *or* that it is successive *or* that issues resolved on appeal will

5  not be reconsidered on habeas corpus *or* that issues that could have been raised on direct appeal cannot be

6  raised in a habeas petition).

7       Here, the California Supreme Court does not state which procedural rule or rules it is relying on to

8  deny Petitioner's petition and there are no clues to guide this Court in its review.  (Lodgment 9.)  For

9  example, the court's denial citation does not include a pinpoint cite to the specific page or language it is

10  relying upon.  <u>See Ratliff</u>, 712 F. Supp. 2d at 1051 (Respondent has not satisfied burden of proving petition

11  was denied for untimeliness where California Supreme Court cited to <u>In re Clark</u> without any page cite or

12  specific language); <u>Fernandez v. Gonzalez</u>, 2009 WL 6543660, *15 (C.D. Cal. Sept. 3, 2009) (failure to

13  provide "jump cite" for <u>In re Clark</u>, a 49 page opinion that stands for a number of propositions, makes the

14  citation ambiguous and prevents it from precluding federal collateral review).  In addition, there is no lower

15  court opinion so the Court cannot "look through" the silent denial to the lower court opinion for guidance

16  on the court's reasoning.  <u>See Ylst v. Nunnemaker</u> 501 U.S. 797, 803-04 (1991); <u>Thomas v. Uribe</u>, 2010 WL

17  3583365, *3 n.4 (E.D. Cal. Sept. 10, 2010) (court looked through California Supreme Court's silent denial

18  to procedural default reasoning expressed by lower court).  Finally, Petitioner's petition is subject to attack

19  under both doctrines since it was filed more than eighteen months after the direct appeal was final and after

20  a previous habeas filing.  And, in fact, Respondent argues that the petition is both successive and untimely.

21  (Doc. No. 9-2 at 12-16 (lengthy argument that petition is successive and additional statement on page 16

22  that "the *Clark* citation also means the petition is untimely")).  Because the order is ambiguous, it cannot

23  preclude federal collateral review unless Respondent pleads and proves that both the timeliness and

24  successive bars are adequate and independent.  <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989) (procedural default

25  can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests

26  on a state procedural bar"); <u>Fernandez</u>, 2009 WL 6543660, *15 (ambiguity in denial order prevents order

27  from precluding federal collateral attack); <u>Williams v. Walker</u>, 2009 WL 4040091, *5-6 (S.D. Cal. Nov. 18,

28  2009) (citing <u>Washington v. Cambra</u>, 208 F.3d 832, 834 (9th Cir. 2000)) (ambiguous order requires

1   Respondent to plead and prove independency and adequacy of all suggested bars).

2         Respondent has not satisfied his burden.  Because he has not yet answered, Respondent has not plead

3   the independency and adequacy of either doctrine in his answer.  In his motion to dismiss, Respondent

4   asserts that "there is a procedural default of the claims raised in the second state habeas petition" and

5   provides basic procedural default law. (Doc. No. 9-2 at 12, 12-15.)  Respondent then states that the "petition

6   was denied as successive" and explains the In re Clark decision.  (Id. at 15.)  Without citing any federal law,

7   Respondent states that the successive bar is independent of federal law.  (Id. at 16.)  This statement is

8   followed by the only reference to the In re Clark untimeliness bar: "Cf. Bennett, 322 F.3d at 582-83

9   (untimeliness rule independent of federal law)."  (Doc. No. 9-2 at 16.)  Respondent does not address the

10  adequacy of either doctrine.

11        Even if Respondent had plead independence and adequacy of the Clark untimeliness bar, it would

12  have been to no avail because courts repeatedly have held that the Clark untimeliness bar is inadequate.

13  Townsend, 562 F.3d at 1208 ("Because the [Respondent] offers no evidence that California operated under

14  clear standards for determining what constituted 'substantial delay' in [2007], [he] failed to meet [his]

15  burden of proving that California's timeliness bar was sufficiently clear and certain to be an adequate state

16  bar."); King v. LaMarque, 464 F.3d 963, 965-68 (9th Cir. 2006); Ross v. Felker, 669 F. Supp. 2d 1135,

17  (C.D. Cal. 2009); Dean v. Grounds, 2010 WL 4687815 (N.D. Cal. Nov. 8, 2010); Martin v. Walker, 357

18  Fed.Appx. 793 (9th Cir. 2009).  Respondent made no effort to prove that the timeliness bar was "sufficiently

19  clear and certain" and the case law reflects a consistent determination that such proof is unavailable at this

20  time.  Accordingly, the Court finds that Respondent has not carried his burden of proving the adequacy of

21  the timeliness bar.[11]

22         With regard to Respondent's assertion of the successive bar, Petitioner argues that the In re Clark

23  cite is ambiguous and that neither the timeliness nor successiveness procedural bars are independent and

24

25  _____

26  [11]The Court acknowledges that the timeliness bar has been independent of federal law since 1998.  Townsend, 562 F.3d
    at 1206-07.  With regards to the first two steps of the adequacy review, the Court finds that Respondent did not plead adequacy.
27  Nonetheless, Petitioner stated that the timeliness bar has not been consistently applied. (Doc. No. 16 at 6, 11.)  Because the Ninth
    Circuit previously has held the timeliness bar to be inadequate, this challenge satisfies Petitioner's burden.  King, 464 F.3d at 967;
28  Ross, 669 F. Supp. 2d. at 1141.  Under Bennett, 322 F.3d at 585-86, the burden returns to Respondent.  Respondent did not file
    a reply brief or any other evidence purporting to establish adequacy.  As such, Respondent has not satisfied its burden.

1    adequate. (Doc. No. 16 at 6-7, 11-15.) However, Petitioner did not provide any evidence supporting his

2    assertion. Respondent did not file a reply or any additional evidence or legal authority establishing that the

3    successive bar is legally adequate.

4         As with the <u>Clark</u> untimeliness bar, the Court acknowledges that the <u>Clark</u> successive petition default

5    bar has been independent of federal law since 1998. <u>Bennett</u>, 322 F.3d at 582-83. However, the Ninth

6    Circuit has not explicitly addressed the adequacy of the bar and district courts have differed on that

7    conclusion. In this case, it is unclear whether either party has satisfied his shifting burden as described in

8    <u>Bennett</u>. First, while Respondent asserted the procedural bar, he did not address whether the procedural bar

9    for successive petitions was "clear and well-established" and "consistently applied" in 2008 when the

10   alleged default occurred. Assuming Respondent did satisfy his initial burden, Petitioner fails to assert

11   "specific factual allegations" demonstrating the inconsistent application of the rule. However, since there

12   are courts who have found the successive bar prohibition to be inadequate, Petitioner's stated challenge may

13   be sufficient. <u>See King</u> 464 F.3d at 967 (simply contesting the adequacy of a bar is sufficient where the

14   Ninth Circuit previously has found the procedural rule to be too ambiguous to bar federal review); <u>Ross</u>,

15   669 F. Supp. 2d at 1141 (same). Assuming Petitioner did satisfy his burden, Respondent has not made any

16   effort to prove the adequacy of the bar. The Court need not resolve these issues in this case since, as

17   discussed above, the California Supreme Court's ruling was ambiguous and Respondent has not proved the

18   adequacy of the <u>Clark</u> timeliness bar.

19        Accordingly, the Court **RECOMMENDS** that Respondent's motion to dismiss based on a

20   procedural bar be **DENIED.**

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying Respondent's Motion to Dismiss.

**IT IS ORDERED** that no later than **February 15, 2011**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties within **10 days** of being served with objections. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

DATED: January 31, 2011

**BERNARD G. SKOMAL**
United States Magistrate Judge